IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DERMA PEN, LLC, MICHAEL ANDERER, JEREMY JONES, MICHAEL J. MORGAN, CHAD MILTON,<br><br>        Plaintiffs,<br><br>v.<br><br>SENTINEL INSURANCE COMPANY, LTD.,<br><br>        Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING SENTINEL'S MOTION FOR SUMMARY JUDGMENT AND DENYING DERMA PEN'S MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:16-cv-00823-DN<br><br>District Judge David Nuffer |

This case involves an insurer's duty to defend and indemnify an insured against allegations regarding the insured's evasion of "contractual right[s] to purchase a trademark and domain name."[1] In an Underlying Lawsuit,[2] 4EverYoung, Ltd. ("4EverYoung") asserted counterclaims against Derma Pen, LLC, Michael Anderer, Jeremy Jones, Michael J. Morgan, Chad Milton (collectively "Derma Pen"), and others relating to intellectual property rights and obligations under a Sales Distribution Agreement ("Agreement") between 4EverYoung and Derma Pen, LLC ("4EverYoung's Counterclaim").[3] In this case, Derma Pen seeks declaratory judgment against Defendant Sentinel Insurance Company, Ltd. ("Sentinel") based on Sentinel's denial of Derma Pen's tender under a commercial general liability insurance policy ("Policy")

---

[1] Complaint for Declaratory Judgment ("Complaint"), docket no. 45, filed June 3, 2021. The Complaint was originally filed as docket no. 3-1 on July 22, 2016. However, the document was incomplete—pages 9 and 10 were missing. The complete Complaint was refiled as docket no. 45 on June 3, 2021.

[2] *Derma Pen, LLC v. 4EverYoung Limited, et al.*, No. 2:13-cv-00729-DN-EJF (D. Utah) ("Underlying Lawsuit").

[3] Fourth Amended Counterclaim and Demand for Jury Trial ("4EverYoung's Counterclaim"), ECF no. 711 in Underlying Lawsuit, filed Mar. 23, 2015, docket no. 18-3, filed May 15, 2017.

for defense and indemnity against 4EverYoung's Counterclaim.[4] The parties' dispute turns on whether Sentinel had a duty to defend and indemnify Derma Pen in the Underlying Lawsuit based on the Policy's coverage for advertising injuries. Derma Pen and Sentinel have filed cross motions for summary judgment.[5]

The Undisputed Material Facts demonstrate that 4EverYoung's Counterclaim does not allege an advertising injury giving rise to potential liability under the Policy. 4EverYoung's allegations do not meet the Policy's definition of "advertising injury" and, regardless, fall within the Policy's exclusions of coverage. Therefore, Sentinel had no duty to defend and indemnify Derma Pen in the Underlying Lawsuit as a matter of law. Sentinel's Motion for Summary Judgment[6] is GRANTED, and Derma Pen's Motion for Summary Judgment[7] is DENIED.

## Contents

BACKGROUND ................................................................................................ 3
UNDISPUTED MATERIAL FACTS ............................................................... 5
STANDARD OF REVIEW ............................................................................. 17
DISCUSSION .................................................................................................. 18
    The Policy does not permit consideration of extrinsic evidence ..................... 20
    The Policy's relevant provisions are clear and unambiguous ......................... 22
    4EverYoung's Counterclaim does not allege an advertising injury covered by the Policy ................................................................................................................ 27
        The allegations in 4EverYoung's Counterclaim do not meet the Policy's definition of "advertising injury" ............................................. 28
        4EverYoung's Counterclaim is excluded from coverage under the Policy's Breach of Contract Exclusion ................................................... 32
        4EverYoung's Counterclaim is excluded from coverage under the Policy's Intellectual Property Exclusion and Domain Name Exclusion ................ 35
        Sentinel had no duty to indemnify Derma Pen against 4EverYoung's Counterclaim ................................................................................... 39
    Conclusion ........................................................................................................ 39
ORDER ............................................................................................................ 40

---

[4] Complaint ¶¶ 26-39.

[5] Plaintiffs' Motion for Summary Judgment ("Derma Pen's Motion for Summary Judgment"), docket no. 18, filed May 5, 2017; Defendant Sentinel Insurance Company, Ltd.'s Motion for Summary Judgment and Supporting Memorandum ("Sentinel's Motion for Summary Judgment"), docket no. 26, filed June 15, 2017.

[6] Docket no. 26, filed June 15, 2017.

[7] Docket no. 18, filed May 5, 2017.

## BACKGROUND

This case arises out of a lengthy Underlying Lawsuit between Derma Pen and 4EverYoung over a micro-needling device called the "Dermapen."[8] In early 2011, 4EverYoung sought a United States distributor for the Dermapen.[9] Once 4EverYoung found possible distributors,[10] Derma Pen, LLC was formed and an Agreement between Derma Pen, LLC and 4EverYoung was executed.[11] Under the Agreement, Derma Pen, LLC was granted the exclusive right to distribute 4EverYoung products (such as the Dermapen) within the United States.[12] The Agreement also stated that although Derma Pen, LLC owned the United States trademark rights to "Dermapen," 4EverYoung owned the trademark in the rest of the world.[13]

Soon after the Agreement's execution, Derma Pen, LLC became dissatisfied with its terms and terminated the Agreement.[14] In turn, 4EverYoung invoked its rights under the Agreement to acquire all rights in the Dermapen trademark and domain name.[15] By giving notice to Derma Pen, LLC of its intention to exercise its post-termination rights, 4EverYoung allegedly became the equitable, beneficial owner of the Dermapen trademark and domain name.[16] However, Derma Pen allegedly continued to use this intellectual property in connection with its

---

[8] Complaint ¶¶ 10, 16, 18.

[9] 4EverYoung's Counterclaim ¶ 21.

[10] Plaintiffs Michael Morgan and Chad Milton meet with 4EverYoung's principal, Stene Marshall, regarding distribution and became members of Derma Pen, LLC. *Id*. ¶¶ 9-10, 23-25. Plaintiffs Michael Anderer and Jeremy Jones also later became members of Derma Pen, LLC. *Id*. ¶¶ 5, 8.

[11] *Id*. ¶¶ 21-35; Complaint ¶ 9; Sales Distribution Agreement ("Agreement"), docket no. 20-1, filed May 15, 2017.

[12] 4EverYoung's Counterclaim ¶¶ 37-38; Complaint ¶ 10; Agreement §§ 1.1, 1.4, 2.1, Exhibit A.

[13] 4EverYoung's Counterclaim ¶ 41; Complaint ¶ 11; Agreement § 2.2, 12.1.

[14] 4EverYoung's Counterclaim ¶¶ 60, 64; Complaint ¶ 15; Agreement § 11.1.

[15] 4EverYoung's Counterclaim ¶ 65; Agreement §§ 12.2, 14.6.

[16] 4EverYoung's Counterclaim ¶¶ 51, 65, 67; Agreement § 12.2.

marketing and sale of 4EverYoung inventory and with new counterfeit products, refusing to comply with its post-termination obligations under the Agreement.[17]

On August 1, 2013, Derma Pen, LLC initiated the Underlying Lawsuit against 4EverYoung and others.[18] 4EverYoung filed its Fourth Amended Counterclaim against Derma Pen and others in that case on May 2, 2014 ("4EverYoung's Counterclaim").[19] The Preliminary Statement in 4EverYoung's Counterclaim states: "This Action involves '4EverYoung's contractual right to purchase a trademark and domain name from Derma Pen[, LLC] and Counterclaim Defendants' attempts to evade that right.'"[20]

Derma Pen tendered 4EverYoung's Counterclaim to Sentinel by letter dated April 10, 2015, seeking defense and indemnity in the Underlying Lawsuit.[21] In a letter dated June 2, 2015, Sentinel denied a duty to defend and indemnify against 4EverYoung's Counterclaim.[22] Derma Pen then initiated this case in Utah state court on June 20, 2016.[23] The case was later removed to the United States District Court for the District of Utah on July 21, 2016, based on diversity jurisdiction.[24] Derma Pen and Sentinel now seek summary judgment on Derma Pen's claim for

---

[17] 4EverYoung's Counterclaim ¶¶ 66-76, 80, 83-94.

[18] [Underlying] Complaint, ECF no. 2 in Underlying Lawsuit, filed Aug. 1, 2013, docket no. 18-1, filed May 15, 2017.

[19] 4EverYoung's Counterclaim.

[20] *Id.* at 1 (quoting Corrected Memorandum Decision and Order Granting in Part 4EverYoung's Motion for Preliminary Injunction Against Michael E. Anderer; Denying Michael Anderer's Motion to Vacate at 3, ECF no. 634 in Underlying Lawsuit, filed Feb. 27, 2015). 4EverYoung's Counterclaim was ultimately stricken and dismissed on August 29, 2016, as a sanction for 4EverYoung's failure to comply with court orders. Memorandum Decision and Order, ECF no. 928 in Underlying Lawsuit, filed Aug. 29, 2016. Final Judgment entered in favor of Derma Pen, LLC and against 4EverYoung in the Underlying Lawsuit on May 8, 2017, based on 4EverYoung's default. Order Directing Entry of Default and Notice of 55(b)(2) Evidentiary Hearing, ECF no. 1001 in Underlying Lawsuit, filed Jan. 30, 2017; Final Judgment, ECF no. 1043 in Underlying Lawsuit, filed May 8, 2017.

[21] Letter to Sentinel, docket no. 19-1, filed May 15, 2017.

[22] Denial of Coverage Letter, docket no. 19-2, filed May 15, 2017.

[23] Complaint; Notice of Removal of Action Under 28 U.S.C. §§ 1332, 1441, and 1446 ("Notice of Removal") ¶ 1, docket no. 2, filed July 21, 2016.

[24] Notice of Removal.

declaratory judgment that Sentinel owed a duty to defend and indemnify Derma Pen against 4EverYoung's Counterclaim under the Policy.[25]

## UNDISPUTED MATERIAL FACTS[26]

1.      In late July or early August 2011, Derma Pen, LLC entered a "Sales Distribution Agreement" with 4EverYoung ("Agreement").[27]

2.      The Agreement granted Derma Pen, LLC the exclusive right to distribute a product called the "Dermapen" within the United States and addressed ownership of the "Dermapen" trademark rights between 4EverYoung and Derma Pen, LLC.[28]

3.      Derma Pen, LLC terminated the Agreement on May 30, 2013.[29]

4.      On August 1, 2013, Derma Pen, LLC initiated a lawsuit against 4EverYoung and others in the United States District Court for the District of Utah, No. 2:13-CV-00729-DN ("Underlying Lawsuit").[30]

5.      On May 2, 2014, 4EverYoung filed its Fourth Amended Counterclaim against Derma Pen and others in the Underlying Lawsuit ("4EverYoung's Counterclaim").[31]

---

[25] Derma Pen's Motion for Summary Judgment; Sentinel's Motion for Summary Judgment.

[26] These Undisputed Facts are compiled from the Statement of Undisputed Material Facts in Derma Pen's Motion for Summary Judgment and Sentinel's Motion for Summary Judgment, along with the parties' respective responses to those facts. Derma Pen's Motion for Summary Judgment at iii-xv; Sentinel's Motion for Summary Judgment at iv-xvii; Defendant's Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment ("Sentinel's Response") at v-xxx, docket no. 23, filed June 12, 2017; Memorandum in Opposition to Defendant's Motion for Summary Judgment, and Reply Memorandum in Support of Plaintiffs' Motion for Summary Judgment ("Derma Pen's Response") at iii-xxi, docket no. 31, filed July 28, 2017. Any facts asserted by the parties that do not appear in these Undisputed Material Facts are either not material, not sufficiently supported by evidence, or are not facts but rather are characterizations of facts or legal conclusions.

[27] Agreement.

[28] *Id.* §§ 2.1, 12.2.

[29] Termination Notice, docket no. 20-2, filed May 15, 2017.

[30] [Underlying] Complaint.

[31] 4EverYoung's Counterclaim.

6. 4EverYoung's Counterclaim began with a "Preliminary Statement" that stated: "This action involves '4EverYoung's contractual right to purchase a trademark and domain name from Derma Pen[, LLC] and Counterclaim Defendants' attempts to evade that right."[32]

7. 4EverYoung's Counterclaim asserted 11 causes of action: (1) breach of contract; (2) breach of covenant of good faith and fair dealing; (3) common law and statutory fraudulent transfer; (4) unjust enrichment; (5) tortious interference with business relations; (6) conversion; (7) civil conspiracy; (8) trademark infringement; (9) trade name infringement; (10) unfair competition pursuant to 15 U.S.C. § 1125(a); and (11) false designation of origin pursuant to 15 U.S.C. § 1125(a).[33]

8. The allegations in the breach of contract counterclaim were realleged and "incorporated by reference" into each of the other 10 causes of action in 4EverYoung's Counterclaim.[34]

9. 4EverYoung's Counterclaim alleged, in part:

   a. Derma Pen advertised and sold a "knock-off Product acquired from a third party."[35]

   b. "Derma Pen has also included blatantly misleading and/or untrue statement in its marketing, including asserting that . . . its products are "100% original."[36]

---

[32] *Id.* at 1.

[33] *Id.* at ¶¶ 219-316.

[34] 4EverYoung's Counterclaim ¶¶ 219-28, 237, 251, 259, 267, 273, 280, 290, 296, 307.

[35] *Id.* ¶ 86.

[36] *Id.*

c.     Derma Pen intended "to pass off their goods and services as the goods and services of, approved by, sponsored by, and/or affiliated with [4EverYoung]" and Derma Pen's acts "constitute unfair competition and passing off."[37]

10.     The breach of contract counterclaim in 4EverYoung's Counterclaim alleged, in part: "Derma Pen[, LLC] has materially breached the Sales Distribution Agreement by . . . failing to comply with its post-termination obligations, including to offer the Trademark and Domain Name to 4EverYoung for purchase, continuing to use the Trademark and Domain Name, and continuing to market and sell Dermapen goods and services."[38]

11.     The breach of covenant of good faith and fair dealing counterclaim in 4EverYoung's Counterclaim alleged, in part: "Derma Pen[, LLC] has breached in the implied covenant . . . refusing to comply with the Sales Distribution Agreement's valuation and transfer provisions" and "Derma Pen[, LLC]'s conduct is and has been inconsistent with the agreed-upon common purpose of the Sales Distribution Agreement."[39]

12.     The common law and statutory fraudulent transfer counterclaim in 4EverYoung's Counterclaim alleged, in part: "Derma Pen has continually and repeatedly frustrated 4EverYoung's efforts to exercise its purchase rights, including by without limitation repudiating its obligations under the Sales Distribution Agreement."[40]

13.     The unjust enrichment counterclaim in 4EverYoung's Counterclaim alleged, in part: "4EverYoung conferred a benefit upon Counterclaim Defendants when Derma Pen[, LLC] failed and refused to comply with its post-termination obligations under the Sales Distribution

---

[37] *Id.* ¶¶ 299-300.

[38] *Id.* ¶ 222.

[39] *Id.* ¶¶ 232-33.

[40] *Id.* ¶ 239.

Agreement" and a "willful and intentional violation of and frustration of 4EverYoung's rights under the Sales Distribution Agreement."[41]

14.     The tortious interference with business relations counterclaim in 4EverYoung's Counterclaim alleged, in part: "Counterclaim Defendants have caused Derma Pen[, LLC] to evade its post-termination obligations under the Sales Distribution Agreement."[42]

15.     The conversion counterclaim in 4EverYoung's Counterclaim alleged, in part: "By operation of the Sales Distribution Agreement, 4EverYoung is entitled to use and possession of the Trademark and Domain Name. Counterclaim Defendants have acted to willfully interfere with the Trademark and Domain name, without lawful justification."[43]

16.     The civil conspiracy counterclaim in 4EverYoung's Counterclaim alleged, in part: "Derma Pen formed a combination of two or more persons . . . . There was an object of the combination to be accomplished, including but not limited to, evading Derma Pen[, LLC]'s post-termination obligations under the Sales Distribution Agreement."[44]

17.     The trademark infringement counterclaim in 4EverYoung's Counterclaim alleged, in part: "4EverYoung has a protectable and enforceable equitable interest in the Trademark by virtue of . . . Derma Pen[, LLC]'s deliberate breach and repudiation of its . . . obligations under the Sales Distribution Agreement."[45]

18.     The trade name infringement, unfair competition, and false designation of origin counterclaims in 4EverYoung's Counterclaim alleged, in part: "4EverYoung became the

---

[41] *Id.* ¶¶ 253-55.

[42] *Id.* ¶ 261.

[43] *Id.* ¶¶ 269-70.

[44] *Id.* ¶¶ 275-75.

[45] *Id.* ¶ 283.

equitable, beneficial owner of the Trademark and Domain Name . . . under Sections 12.2 and 14.6 of the Sales Distribution Agreement."[46]

19. Sentinel issued the following commercial general liability insurance policies to Derma Pen, LLC: Policy No. 34 SBA PK3002 DX, in effect from 08/01/12 to 08/01/13;[47] Policy No. 34 SBA PK3002 DX, in effect from 08/01/13 to 08/01/14;[48] Policy No. 34 SBA IW9082 DX, in effect from 08/01/14 to 10/10/14[49] (collectively, the "Policy").[50]

20. The Policy contains the following Insuring Agreement:[51]

**BUSINESS LIABILITY FORM**

\* \* \*

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the stock insurance company member of Sentinel providing this insurance.

The word "insured" means any person or organization qualifying as such under Section C. - Who Is An Insured.

\* \* \*

**A. COVERAGES**

**1. BUSINESS LIABILITY COVERAGE (BODILY INJURY, PROPERTY DAMAGE, PERSONAL AND ADVERTISING INJURY)**

**Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury",

---

[46] *Id.* ¶¶ 291, 297, 308.

[47] Docket no. 26-2, filed June 15, 2017.

[48] Docket no. 26-3, filed June 15, 2017.

[49] Docket no. 26-4, filed June 15, 2017.

[50] While the three policies contain the same language, the corresponding docket entries do not contain the same bates stamp numbers. For ease of reference, all citations to the Policy will refer to the bates stamp "SENT" page numbers in docket no. 26-2, filed June 15, 2017.

[51] Policy at 00023.

"property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply.

\* \* \*

b.  This insurance applies:

\* \* \*

(2) To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

21.     The Policy contains the following definitions:[52]

### G. LIABILITY AND MEDICAL EXPENSES DEFINITIONS

1.  "Advertisement" means the widespread public dissemination of information or images that has the purpose of inducing the sale of goods, products or services through:

    a.  (1) Radio;

        (2) Television;

        (3) Billboard;

        (4) Magazine;

        (5) Newspaper;

    b.  The Internet, but only that part of a web site that is about goods, products or services for the purposes of inducing the sale of goods, products or services; or[53]

    c.  Any other publication that is given widespread public distribution.

---

[52] *Id*. at 00042-45.

[53] The Cyberflex Endorsement modifies this subsection for the insured's "web site and internet related activities." *Id.* at 00049.

However, "advertisement" does not include:

    a. The design, printed material, information or images contained in, on or upon the packaging or labeling of any goods or products[.]

    b. An interactive conversation between or among persons through a computer network.

2. "Advertising idea" means any idea for an "advertisement."

\* \* \*

17. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

\* \* \*

    f. Copying, in your "advertisement", a person's or organization's "advertising idea" or style of "advertisement";[54]

\* \* \*

21. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies as alleged.

22. The Policy contains the following exclusions of coverage ("Breach of Contract Exclusion" and "Domain Name Exclusion"):[55]

**B**. **EXCLUSIONS**.

**1. Applicable To Business Liability Coverage**

This insurance does not apply to:

\* \* \*

**p. Personal And Advertising Injury**

\* \* \*

---

[54] The Cyberflex Endorsement modifies this subsection for the insured's "web site and internet related activities." *Id*.

[55] *Id.* at 00025, 00030.

(4) Arising out of any breach of contract, except an implied contract to use another's "advertising idea" in your "advertisement";[56]

* * *

(10) Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatags, or any other similar tactics to mislead another's potential customers.

23. The Policy contains the following endorsement modifying exclusions of coverage and definitions ("Intellectual Property Exclusion"):[57]

**AMENDMENT OF EXCLUSIONS AND DEFINITION – PERSONAL & ADVERTISING INJURY**.

This endorsement modifies insurance provided under the following:

**BUSINESS LIABILITY COVERAGE FORM**.

A. Subparagraph 1.p. (7), (8), (15) of Paragraph 2., of Section B. **Exclusions** is deleted and replaced with the following:

**p. Personal and Advertising Injury:**

(7) (a) Arising out of any actual or alleged infringement or violation of any intellectual property right, such as copyright, patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity; or[58]

(b) Any injury or damage alleged in any claim or "suit" that also alleges an infringement or violation of any intellectual property right, whether such allegation of infringement or violation is made by you or by any other party involved in the claim or "suit", regardless of whether this insurance would otherwise apply.

---

[56] The Cyberflex Endorsement modifies this subsection for the insured's "web site and internet related activities." *Id.* at 00049.

[57] *Id.* at 00050.

[58] The Cyberflex Endorsement modifies this subsection for the insured's "web site and internet related activities." *Id.* at 00049.

However, this exclusion does not apply if the only allegation in the claim or "suit" involving any intellectual property right is limited to:[59]

    (1) Infringement, in your "advertisement", of:

        (a) Copyright;

        (b) Slogan; or

        (c) Title of any literary or artistic work; or

    (2) Copying, in your "advertisement", a person's or organization's "advertising idea" or style of "advertisement".

24.    The Policy also contains the following endorsement modifying exclusions of coverage and definitions ("Cyberflex Endorsement"):[60]

**CYBERFLEX COVERAGE**

This endorsement modifies insurance provided under the following:

**BUSINESS LIABILITY COVERAGE FORM**

This endorsement modifies coverage under the Business Liability Coverage Form for your web site or internet related **activities.**

**A.  Exclusion** 1.p. "Personal and Advertising Injury" (Section **B. – EXCLUSIONS**) is modified as follows:

    1.  Paragraphs (4), (5) and (7) are deleted and replaced by the following:

* * *

        (4) Arising out of any breach of contract, except an implied contract to use another's "advertising idea" in your "advertisement" or on "your web site";

* * *

---

[59] The Cyberflex Endorsement modifies this subsection for the insured's "web site and internet related activities." *Id*.

[60] *Id.* at 00049.

(7) (a) Arising out of any violation of any actual or alleged infringement or violation of intellectual property rights such as copyright, patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity.

(b) Any injury or damage alleged in any claim or "suit" that also alleges an infringement or violation of any intellectual property right, whether such allegation of infringement or violation is made by you or obey any other party involved in the claim or "suit", regardless of whether this insurance would otherwise apply.

However, this exclusion does not apply to infringement, in your "advertisement" or on "your web site", of

(a) Infringement in your "advertising" of:

(i) Copyright;

(ii) Slogan; or

(iii) Title of any literary or artistic work; or

(b) Copying in your "advertisement", a person's or organization's "advertising idea" or style of "advertisement".

\* \* \*

B. Section **G.** – LIABILITY AND MEDICAL EXPENSES DEFINITIONS is amended as follows:

1. Paragraph b. of definition 1. "advertisement" is deleted and replaced by:

   "Advertisement" means the widespread public dissemination of information or images that has the purpose of inducing the sale of goods, products or services through:

   b. The Internet.

2. Paragraphs f. and g. of the definition of "personal and advertising injury" are deleted and replaced by the following:

   "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

     f.   Copying, in your "advertisement" or "your web site", a person's or organization's "advertising idea" or style of "advertisement";

* * *

    3.   The following is added to the definition of "personal and advertising injury":

As used in this definition, oral, written or electronic publication includes publication of material in your care, custody or control by someone not authorized to access or distribute that material.

    4.   The following definition is added:

"Your web site" means a web page or set of interconnected web pages prepared and maintained by your, or by others on your behalf, for the purposes of promoting your goods or services, that is accessible over a computer network.

25.    Through its legal counsel, Derma Pen tendered 4EverYoung's Counterclaim to Sentinel for defense and indemnity for the first time by letter dated April 10, 2015.[61]

26.    Sentinel denied a duty to defend and indemnify Derma Pen against 4EverYoung's Counterclaim in a letter dated June 2, 2015 ("Denial of Coverage Letter").[62]

27.    In the Denial of Coverage Letter, Sentinel stated that the denial was based on, among other things:

    a.    "The claims . . . actually asserted do not trigger personal and advertising injury coverage because they do not allege one or more enumerated personal and advertising injury offenses. Even to the extent that . . . allegations could be construed to allege an enumerated 'personal and advertising injury' offense, coverage is excluded."[63]

---

[61] Letter to Sentinel.

[62] Denial of Coverage Letter.

[63] *Id*. at 6.

b.  "There is an exclusion for personal and advertising injury 'arising out of any breach of contract' . . . [t]his exclusion precludes coverage for all of [4EverYoung's Counterclaim] because the claims arise out of the alleged breach of the insured's contractual obligations with respect to the Dermapen Trademark, the Domain Name, the sale and marketing of Dermapen and/or other similar contractual obligations."[64]

c.  "The Intellectual Property Exclusion also applies to preclude coverage for all of Plaintiff's claims. The applicable version of the Intellectual Property Exclusion varies depending upon the type of conduct at issue. Except with respect to the insured's web site or internet-related activities, the version of the Intellectual Property Exclusion is set for in Endorsement SS 41 62 06 11."[65] "With respect to the insured's web site or internet-related activities, the following version of the Intellectual Property Exclusion applies . . . Endorsement [Form] SS 40 62 06 11."[66]

d.  "There also is an exclusion for personal and advertising injury '[a]rising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatags, or any other similar tactics to mislead another's potential customers.' . . . This exclusion applies to preclude coverage for any claims relating to the use of the 'Dermapen' Trademark to attract . . . customers to Derma Pen LLC's web site."[67]

---

[64] *Id.*

[65] *Id.* at 6-7.

[66] *Id.* at 8-9.

[67] *Id.* at 9

28.    After Sentinel denied the tender, Derma Pen, LLC's counsel asked Sentinel to reconsider its decision in a letter dated June 18, 2015.[68]

29.    Sentinel issued a second and final denial of the tender in a letter dated July 20, 2015.[69]

30.    Derma Pen's Complaint alleges that coverage for 4EverYoung's Counterclaim and the Underlying Lawsuit is triggered only under the "personal and advertising injury" language of the Policy for "copying, in your 'advertisement' or on 'your web site', a person's or organization's 'advertising idea' or style of 'advertisement.'"[70]

## STANDARD OF REVIEW

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[71] A factual dispute is genuine when "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[72] In determining whether there is a genuine dispute of material fact, the district court "view[s] the factual record and draw[s] all reasonable inferences therefrom most favorably to the nonmovant."[73] The moving party "bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."[74]

---

[68] Reconsideration Letter, docket no. 19-3, filed May 15, 2017.

[69] Final Denial of Coverage Letter, docket no. 19-4, filed May 15, 2017.

[70] Complaint ¶ 30.

[71] Fed. R. Civ. P. 56(a).

[72] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 644, 670 (10th Cir. 1998).

[73] *Id.*

[74] *Id.* at 670-71.

Additionally, "[a]t the summary judgment stage, evidence need not be submitted in a form that would be admissible at trial, but the content or substance of the evidence must be admissible."[75] "The requirement is that the party submitting the evidence show that it will be possible to put the information, the substance or content of the evidence, into an admissible form."[76]

## DISCUSSION

Derma Pen's Complaint asserts a single cause of action for declaratory judgment that Sentinel had a duty to defend and indemnify Derma Pen in the Underlying Lawsuit because 4EverYoung's Counterclaim alleged advertising injuries under the Policy.[77] Derma Pen and Sentinel seek summary judgment on this claim.[78]

In federal diversity cases, "the law to be applied in any case is the law of the state," which in this case is Utah.[79] Under Utah law, "an insurer has a duty to defend when the insurer ascertains facts giving rise to potential liability under the insurance policy."[80] "Where the allegations, if proved, show there is no potential liability under the policy, there is no duty to defend."[81]

---

[75] *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 999 (10th Cir. 2019) (internal citations and quotations omitted).

[76] *Id.* at 999 n.15 (internal citations and quotations omitted).

[77] Complaint ¶¶ 28-30.

[78] Derma Pen's Motion for Summary Judgment; Sentinel's Motion for Summary Judgment.

[79] *James River Ins. Co. v. Rapid Funding*, LLC, 658 F.3d 1207, 1216-17 (10th Cir. 2011) (quoting *Erie v. Tompkins*, 304 U.S. 64, 78 (1938).

[80] *Basic Research, LLC v. Admiral Ins. Co.*, 297 P.3d 578, 580 (Utah 2013) (quotation marks omitted).

[81] *Id.* (internal punctuation and quotations omitted).

Courts determine whether an insurer has a duty to defend by comparing the allegations of the underlying complaint to the terms of the insurance policy.[82] "[T]he general rule is that the burden of establishing coverage under . . . an insurance policy is on those seeking to come within the coverage of the policy."[83] But "[i]t is the insurance company's burden to demonstrate that none of the allegations of the underlying claim is potentially covered (or that a policy exclusion conclusively applies to exclude all potential for such coverage)."[84] "Like other contracts, an insurance policy is interpreted to give effect to the intent of the parties as expressed by the plain language of the instrument itself."[85]

"If the language found within [the policy and the underlying complaint] clearly and unambiguously indicates that a duty to defend does or does not exist, the analysis is complete" and "extrinsic evidence plays no part in the analysis."[86] This "eight corners" rule is based on the fact that most insurance policies condition a defense on the *specific allegations asserted in the complaint*.[87] However, an exception applies where a policy more generically conditions a defense on *claims covered by the policy*. In this alternate circumstance, "extrinsic evidence would be relevant" to shed light on facts underlying the complaint's allegations.[88]

---

[82] *Id.*; *Nova Cas. Co. v. Able Constr., Inc.*, 983 P.2d 575, 578 (Utah 1999); *Headwaters Resources, Inc. v. Illinois Union Ins. Co.*, 770 F.3d 885, 891 (10th Cir. 2014); *Cincinnati Ins. Co. v. AMSCO Windows*, 921 F. Supp. 2d 1226, 1236 (D. Utah 2013).

[83] *Utah Farm Bureau Ins. Co. v. Dairyland Ins. Co.*, 634 F.2d 1326 (10th Cir. 1980).

[84] *Headwaters Resources, Inc.*, 770 F.3d at 891 (internal quotations omitted).

[85] *Id.*

[86] *Equine Assisted Growth & Learning Ass'n v. Carolina Cas. Ins.*, 266 P.3d 733, 736 (Utah 2011).

[87] *Id.* at 733 (quoting *Fire Ins. Exch. v. Est. of Therkelsen*, 27 P.3d 555, 560 (Utah 2001)).

[88] *Est. of Therkelsen*, 27 P.3d at 560.

### The Policy does not permit consideration of extrinsic evidence

Derma Pen argues that extrinsic evidence should be considered to determine Sentinel's duty to defend and indemnify under the Policy because Sentinel "assumed the duty to provide a defense against any suit that is covered by the Policy."[89] Specifically, Derma Pen seeks consideration of motion for temporary restraining order filed by 4EverYoung in the Underlying Lawsuit ("Motion for TRO").[90] The threshold evidentiary question is whether Sentinel's duty to defend and indemnify under the Policy is triggered by the facial language of 4EverYoung's Counterclaim or whether the Policy is such that Sentinel's duty is triggered by facts underlying the allegations in 4EverYoung's Counterclaim.

In *Employers Mutual Casualty Co. v. Bartile Roofs, Inc.*,[91] the Tenth Circuit Court of Appeals declined to consider extrinsic evidence under a similar insurance policy which granted a duty to defend "against any 'suit' seeking 'damages because of . . . property damage.'"[92] "Suit" was defined as "civil proceedings in which a party 'allege[s]' the existence of damages within the coverage of the applicable CGL policy[.]"[93] The insured argued that extrinsic evidence should be considered because the phrase "to which this insurance applies" made the duty to defend conditional on claims covered by the policy.[94] The Tenth Circuit disagreed, holding that the policy's definition of "suit" "indicate[d] that the duty to defend depends on the 'allegat[ion] [of] liability within the coverage afforded by the policy' rather than on a determination that the

---

[89] Derma Pen's Motion for Summary Judgment at 4-5.

[90] Defendant's Motion for Temporary Restraining Order and Preliminary Injunction and Supporting Memorandum ("Motion for TRO"), ECF no. 141 in Underlying Lawsuit, filed May 2, 2014, docket no. 18-2, filed May 15, 2017.

[91] 618 F.3d 1153 (10th Cir. 2010).

[92] *Id.* at 1171. The court operated under both Utah and Wyoming law, though it found that no material conflict existed between the laws of the two states. *Id.* at 1172.

[93] *Id.* at 1171

[94] *Id.*

suit is actually covered by the policy."[95] Thus, the policy's language limited the inquiry to the allegations in the underlying complaint.[96]

Here, the Policy provides that Sentinel had a duty to (1) pay for "damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies," and (2) defend "against any 'suit' seeking those damages."[97] "Suit" is defined as "a civil proceeding in which damages because of 'bodily injury,' 'property damage' or 'personal and advertising injury' to which this insurance applies are *alleged*."[98] This language is substantially similar to the language in the policy considered in *Employers Mutual Casualty Co*. and dictates that the same result is reached.

Because of the Policy's definition of "suit,"[99] Sentinel's duty to defend "depends upon the allegation[s] of liability within the coverage afforded by the policy."[100] Thus, Sentinel's duty is triggered on consideration of the allegations in 4EverYoung's Counterclaim alone. The Policy does not permit consideration of extrinsic evidence, such as the Motion for TRO, in determining Sentinel's duty to defend.[101]

But even if the Policy did permit consideration of 4EverYoung's Motion for TRO, the result would be the same. The factual assertions in the Motion for TRO relate to Derma Pen's alleged use of 4EverYoung's intellectual property, including through its web site, in order to pass

---

[95] *Id.* at 1172 (internal citations omitted); *Hartford Cas. Ins. v. Softwaremedia.com*, No. 2:10-cv-01098-BSJ, 2012 WL 965089, *6-7 (D. Utah Mar. 20, 2012).

[96] *Employer's Mutual*, 618 F.3d at 1172.

[97] *Supra* Undisputed Material Facts ¶ 20.

[98] *Id.* ¶ 21 (emphasis added).

[99] *Id*.

[100] *Employer's Mutual*, 618 F.3d at 1172 (internal punctuation omitted).

[101] That 4EverYoung's Counterclaim sought injunctive relief does not change the considerations required by the Policy or alter this analysis.

off 4EverYoung products.[102] These assertions are largely duplicative of the allegations in 4EverYoung's Counterclaim. And as discussed below,[103] they are insufficient to trigger Sentinel's duty to defend under the Policy.

### The Policy's relevant provisions are clear and unambiguous

The Policy provided coverage to Derma Pen from August 2012 to August 2014.[104] The Policy's relevant coverage provision states:

> [Sentinel] will pay those sums that [Derma Pen] becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. [Sentinel] will have the right and duty to defend [Derma Pen] against any "suit" seeking those damages. However, [Sentinel] will have no duty to defend [Derma Pen] against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply.[105]

The Policy defines "Personal and advertising injury" as "injury, including consequential 'bodily injury', arising out of one or more of the following offenses: . . . (f) Copying, in [Derma Pen's] 'advertisement' or on '[Derma Pen's] web site', a person's or organization's 'advertising idea' or style of 'advertisement[.]'"[106]

"Suit" is defined as "a civil proceeding in which damages because of 'bodily injury,' 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged."[107]

"Advertisement" is defined as "the widespread public dissemination of information or images that has the purpose of inducing the sale of goods, products or services through . . . The

---

[102] Motion for TRO ¶¶ 53, 56-57, 59.

[103] *Infra* Discussion at 26-39.

[104] *Supra* Undisputed Material Facts ¶ 19.

[105] *Supra* Undisputed Material Facts ¶ 20.

[106] *Id*. ¶ 21.

[107] *Id*.

Internet [as modified by Cyberflex Coverage Endorsement Form]."[108] However, "advertisement" does not include "[t]he design, printed material, information or images contained in, on or upon the packaging or labeling of any goods or products."[109]

And "[a]dvertising idea" is defined as "any idea for an 'advertisement.'"[110]

The Policy also contains three relevant exclusions of coverage for an advertising injury. First, the Policy's Breach of Contract Exclusion excludes coverage for any advertising injury "[a]rising out of any breach of contract, except an implied contract to use another's 'advertising idea' in [Derma Pen's] 'advertisement.'"[111]

Second, the Policy's Intellectual Property Exclusion excludes coverage for any advertising injury "[a]rising out of any actual or alleged infringement or violation of any intellectual property right, such as copyright, patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity," or "[a]ny injury or damage alleged in any claim or 'suit' that also alleges an infringement or violation of any intellectual property right."[112] However, the Intellectual Property Exclusion "does not apply if the only allegation in the claim or 'suit' involving any intellectual property right is limited to: (1) Infringement, in [Derma Pen's] 'advertisement', of: (a) Copyright; (b) Slogan; or (c) Title of any literary or artistic work; or (2) Copying, in [Derma Pen's] 'advertisement', a person's or organization's 'advertising idea' or style of 'advertisement'."[113]

---

[108] *Id.*

[109] *Id.*

[110] *Id.*

[111] *Id.* ¶ 22.

[112] *Id.* ¶ 23.

[113] *Id.*

And third, the Policy's Domain Name Exclusion excludes coverage for any advertising injury "[a]rising out of the unauthorized use of another's name or product in [Derma Pen's] e-mail address, domain name or metatags, or any other similar tactics to mislead another's potential customers."[114]

The Policy also includes a Cyberflex Endorsement which modifies the Policy for Derma Pen's "web site or internet related activities."[115] Specifically, the Cyberflex Endorsement modifies the definitions for "advertisement" and "personal and advertising injury," and adds a definition for "[Derma Pen's] web site."[116] The Cyberflex Endorsement also expands the exceptions to the Breach of Contract Exclusion and Intellectual Property Exclusion to cover "an implied contract to use another's 'advertising idea'" and "infringement" "on '[Derma Pen's] web site.'"[117]

Neither party has argued that any language in the Policy's relevant provisions is ambiguous.[118] Derma Pen nevertheless argues that if the Cyberflex Endorsement does not lead to coverage for at least some of the claims in 4EverYoung's Counterclaim, it is inconsistent with the Policy's Intellectual Property Exclusion and Domain Name Exclusion.[119] Derma Pen then

---

[114] *Id.* ¶ 22.

[115] *Id.* ¶ 24.

[116] *Id.*

[117] *Id.*

[118] In a footnote, Derma Pen suggests without arguing that the term "copying" may be ambiguous because it is not defined by the Policy. Derma Pen's Response at 8 n.4. Derma Pen relies on a Fourth Circuit Court of Appeals case which held that the undefined policy term "misappropriation" is "necessarily ambiguous." *Id.* (citing *State Auto Prop. & Cas. Ins. Co. v. Travelers Indem. Co. of Am.*, 343 F.3d 249, 257 (4th Cir. 2003)). The Fourth Circuit case, construing a different policy term, is not persuasive. An undefined policy term having a common sense, plain meaning is not ambiguous. *Bear River Mut. Ins. Co. v. Wright*, 770 P.2d 1019, 1020-21 (Utah Ct. App. 1989). The term "copying" is not ambiguous. It has a commonly understood meaning, *i.e.*, to imitate or reproduce.

[119] Derma Pen's Motion for Summary Judgment at 7; Derma Pen's Response at 17-18.

argues that this inconsistency creates ambiguity which must be read in favor of coverage.[120] However, this argument misreads the Policy.

The Cyberflex Endorsement does not create inconsistency. Rather, the Cyberflex Endorsement and the Intellectual Property Exclusion and Domain Name Exclusion coexist and apply in different circumstances. By its plain language, the Cyberflex Endorsement modifies coverage (including the Intellectual Property Exclusion) "for [Derma Pen's] "web site and internet related activities."[121] The CyberFlex Endorsement is not applicable in circumstances that do not involve Derma Pen's "web site and internet related activities." Under such circumstances, the unmodified language of Intellectual Property Exclusion applies.[122]

The Cyberflex Endorsement also does not create inconsistency with the Domain Name Exclusion. The Cyberflex Endorsement applies generally to the insured's "web site or internet related activities" and specifically to the circumstances in which it expressly modifies the Policy's language, such as with the Intellectual Property Exclusion.[123] The Domain Name Exclusion applies to specific circumstances "arising out of the unauthorized use of another's name or product in [the insured's] e-mail address, domain name or metatags, or any other similar tactics to mislead another's potential customers."[124] These circumstances may involve the insured's "web site or internet related activities."[125] But the Cyberflex Endorsement does not purport to alter or affect these specific circumstances. Thus, the Domain Name Exclusion is not affected by or inconsistent with the Cyberflex Endorsement. The Cyberflex Endorsement's

---

[120] Derma Pen's Motion for Summary Judgment at 7; Derma Pen's Response at 17-18.

[121] *Supra* Undisputed Material Facts ¶ 24.

[122] *Id*. ¶ 23.

[123] *Id*. ¶ 24.

[124] *Id*. ¶ 22.

[125] *Id*. ¶ 24.

modifications of coverage for the insured's "web site or internet related activities" simply do not apply to the specific "web site or internet related activities" identified in the Domain Name Exclusion.

The relevant language of the Policy's coverage, definitions, and exclusions is clear and unambiguous. And the Policy's exclusions of coverage "clearly and unmistakably communicate[] to the insured the specific circumstances under which the expected coverage will not be provide."[126] Therefore, the parties' intent regarding coverage may be determined as a matter of law through the language of the Policy itself, without resort to extrinsic evidence. And whether Sentinel had a duty to defend and indemnify Derma Pen in the Underlying Lawsuit will be determined by comparing the terms of the Policy to the allegations in 4EverYoung's Counterclaim.[127]

Additionally, even if the Cyberflex Endorsement and Intellectual Property Exclusion were inconsistent, as Derma Pen argues, construing these provisions in favor of the coverage afforded by the Cyberflex Endorsement does not change the result in this case. As discussed below, the allegations of 4EverYoung's Counterclaim they are insufficient to trigger Sentinel's duty to defend under the Policy.[128] Any inconsistency caused by the Cyberflex Endorsement does not affect the analysis of whether 4EverYoung's allegations meet the Policy's definition of "advertising injury,"[129] or application of the exclusions of coverage under the Policy's Breach of Contract Exclusion and Domain Name Exclusion.[130]

---

[126] *Headwaters Resources, Inc.*, 770 F.3d at 892 (internal quotations omitted).

[127] *Id*. at 891; *Basic Research*, 297 P.3d at 580.

[128] *Infra* Discussion at 26-39.

[129] *Id*. at 27-31.

[130] *Id*. at 31-38.

**4EverYoung's Counterclaim does not allege**
**an advertising injury covered by the Policy**

Derma Pen argues that 4EverYoung's Counterclaim alleges an advertising injury that is covered by the Policy.[131] Specifically, Derma Pen argues that 4EverYoung's Counterclaim alleges that Derma Pen advertised in connection with its website and internet-related activities, and that the implication of such allegations is that Derma Pen's advertising activities copied or misappropriated 4EverYoung's advertising ideas and style of advertising to the public.[132]

To determine whether an insurer has a duty to defend an "advertising injury" claim, the Tenth Circuit Court of Appeals has promulgated a two-part test. First, the complaint must allege a type of conduct specifically listed in the policy's definition of "advertising injury."[133] And second, there must be a causal connection between the alleged injuries and the insured's advertising activities.[134] The factual allegations of 4EverYoung's Counterclaim are the focus of the inquiry.[135]

Derma Pen points to twelve allegations in 4EverYoung's Counterclaim to support this argument that Sentinel had a duty to defend and indemnify under the Policy.[136] The gravamen of these allegations (and 4EverYoung's Counterclaim as a whole) is that Derma Pen used intellectual property owned by 4EverYoung, which Derma Pen was no longer authorized to use

---

[131] Derma Pen's Motion for Summary Judgment at 5-7; Derma Pen's Response at 1-12.

[132] Derma Pen's Response at 7-8.

[133] *Basic Research*, 297 P.3d at 580; *Novell, Inc. v. Fed. Ins. Co.*, 141 F.3d 983, 985 (10th Cir. 1998).

[134] *Novell, Inc.*, 141 F.3d at 986; *Hartford Cas. Ins.*, 2012 WL 965089, *7.

[135] *Dish Network Corp. v. Arch Specialty Insurance Co.*, 659 F.3d 1010, 1020 (10th Cir. 2011).

[136] Derma Pen's Response at 4-7 (citing 4EverYoung's Counterclaim ¶¶ 86, 99, 222, 232, 234, 282, 284, 292-93, 298-300). Derma Pen's Motion for Summary Judgment almost exclusively cites to 4EverYoung's Motion for TRO to support their argument. Derma Pen's Motion for Summary Judgment at 5-7 (citing Motion for TRO ¶¶ 57, 59).

and in breach of the parties' Agreement.[137] This conduct was allegedly intended to frustrate 4EverYoung's rights by passing off 4EverYoung intellectual property and products as Derma Pen's own and passing off Derma Pen's actions, goods, and services as being performed by, made by, approved by, sponsored by, or affiliated with 4EverYoung.[138] While some allegations arguably do not fall directly into this general thrust of 4EverYoung's Counterclaim, these allegations either arise out of or are inseparably interconnected with the alleged frustration of 4EverYoung's intellectual property rights by Derma Pen's conduct of passing off. Therefore, no separate analysis for these allegations is necessary.

None of the allegations in 4EverYoung's Counterclaim give rise to potential liability under the Policy to trigger Sentinel's duty to defend or indemnify. First, the allegations fail to meet the Policy's definition of "advertising injury." Second, even if an advertising injury is alleged, coverage for such injury is excluded by the Policy's Breach of Contract Exclusion, Intellectual Property Exclusion, and Domain Name Exclusion. And finally, because "[t]he duty to defend is . . . broader than the duty to indemnify," where "there is no duty to defend, there can be no duty to indemnify."[139]

**The allegations in 4EverYoung's Counterclaim do not meet the Policy's definition of "advertising injury"**

Derma Pen argues that "[t]here is really no other reasonable way to interpret 4EverYoung's Counterclaim allegations that Derma Pen misled the public by imitating

---

[137] 4EverYoung's Counterclaim ¶¶ 86, 99, 222, 232, 234, 282, 284, 292-93, 298-300; *Supra* Undisputed Material Facts 9-18

[138] 4EverYoung's Counterclaim ¶¶ 86, 99, 222, 232, 234, 282, 284, 292-93, 298-300; *Supra* Undisputed Material Facts 9-18.

[139] *Mid-America Pipeline Co., LLC v. Mountain States Mut. Cas. Co.*, No. 2:05-cv-00153-DB, 2006 WL 1278748, *1 (D. Utah May 8, 2006)* (citing *Sharon Steel Corp. v. Aetna Cas. & Surety Co.*, 931 P.2d 127 (Utah 1997)); *see also Encompass Indem. Co. v. J.H.*, No. 1:16-cv-00018-DN, 2017 WL 2062868, *9 (D. Utah May 12, 2017).

4EverYoung's advertising, than that it 'copied' its advertising ideas and style."[140] This argument lacks merit.

4EverYoung's Counterclaim does allege that Derma Pen confused and misled the public. But this was not accomplished by Derma Pen allegedly imitating or copying 4EverYoung's advertisement or advertising ideas and style. Rather, 4EverYoung's Counterclaim alleges that Derma Pen confused and misled the public by passing off 4EverYoung's intellectual property and products as Derma Pen's own, and by passing of Derma Pen's actions, goods, and services as being performed by, made by, approved by, sponsored by, or affiliated with 4EverYoung.[141] For example, 4EverYoung's Counterclaim alleges that Derma Pen advertised and sold a "knock-off Product acquired from a third party;" included blatantly misleading and/or untrue statement in its marketing, including asserting that . . . its products are "100% original;" and intended "to pass off their goods and services as the goods and services of, approved by, sponsored by, and/or affiliated with [4EverYoung]."[142] 4EverYoung further alleged that Derma Pen "improperly altered the packaging on Dermapen products . . . mislead[ing] the public as to the source and origin of the products."[143]

These types of allegations do not involve copying an "'advertising idea' or style of 'advertisement'" under the Policy.[144] Indeed, the Policy specifically excludes from the definition of "advertisement" "[t]he design, printed material, information or images contained in, on or upon the packaging or labeling of any goods or products."[145] And a product itself is not an

---

[140] Derma Pen's Response at 8.

[141] 4EverYoung's Counterclaim ¶¶ 86, 99, 222, 232, 234, 298-300; *Supra* Undisputed Material Facts 9-18.

[142] *Supra* Undisputed Material Facts ¶ 9.

[143] 4EverYoung's Counterclaim ¶ 87

[144] *Supra* Undisputed Material Facts ¶¶ 20-21.

[145] *Id*. ¶ 21.

advertisement or advertising idea.[146] Copying another's product or its attributes, or "passing off" one product as another does not constitute copying an "advertising idea" or "style of advertisement."[147]

Derma Pen nevertheless cites to nonbinding case law from other jurisdictions[148] to argue that 4EverYoung's allegations of trademark and trade name infringement, alone, are sufficient to constitute an advertising injury under the Policy.[149] These cases recognize that "a trademark can be seen as an 'advertising idea' because it is a way of marking goods so that they will be identified with a particular source."[150] "Trademarks, therefore, have the same purpose as advertising,"[151] and "ha[ve] the potential to be an advertising idea."[152] However, these cases turned on the specific policy language and trademark infringement allegations at issue in each case.

The relevant policy language in the cases Derma Pen relies on was "infringement of trademarked or service marked titles or slogans . . . committed in the course of advertising of [the insured's] goods, products, or services;"[153] or "misappropriation of advertising ideas or style of

---

[146] *Westport Reinsurance Management, LLC v. St. Paul*, 80 Fed. App'x. 277, 279, 2003 WL 22594407, *2 (3d Cir. 2003); *Advance Watch Co. Ltd. v. Kemper Nat. Ins. Co.*, 99 F.3d 795, 807 (6th Cir. 1996).

[147] *Novell, Inc.*, 141 F.3d at 989 (citing *Bank of the West v. Superior Court*, 833 P.2d 545, 559 (Cal. 1992)); *Microtec Research, Inc. v. Nationwide Mut. Ins. Co.*, 40 F.3d 968 (9th Cir. 1994); *Green Mach. Corp. v. Zurich-American Ins. Group*, 313 F.3d 837, 841 (3d Cir. 2002).

[148] *Tom Kelley Studios, Inc. v. State Farm Gen. Ins. Co.*, 462 Fed App'x 740, 741-42 (9th Cir. 2011); *Houbigant, Inc. v. Federal Insurance Co.*, 374 F.3d 192, 202 (3d Cir. 2004); *State Auto Prop. & Cas. Ins. Co.*, 343 F.3d at 257-58; *CAT Internet Services, Inc. v. Providence Washington Ins. Co.*, 333 F.3d 138, 143 (3d Cir. 2003); *Central Mutual Insurance Co. v. Stunfence, Inc.*, 292 F. Supp. 2d 1072, 1079 (N.D. Ill. 2003)

[149] Derma Pen's Response at 9.

[150] *Houbigant, Inc.*, 374 F.3d at 201 (internal punctuation and quotations omitted).

[151] *Id.*

[152] *State Auto Prop. & Cas. Ins. Co.*, 343 F.3d at 258.

[153] *Tom Kelley Studios, Inc.*, 462 Fed App'x at 741; *Houbigant, Inc.*, 374 F.3d at 195.

doing business;"[154] or "the use of another's advertising idea in [the insured's] advertisement.'"[155] The policy language in each of those cases is broad and susceptible to construction that results in allegations of trademark infringement, alone, clearly constituting an advertising injury. But the relevant policy language and facts of these cases differ greatly for this case. And therefore, Derma Pen's cases are not persuasive.

On the other hand, prior District of Utah case law has construed identical language to the Policy in this case and concluded that an advertising injury was not alleged despite the complaint's allegations of trademark and copyright infringement.[156] This was because the complaint did not allege damages arising out of "copying in [the insured's] 'advertisement' [of] a person's or organization's 'advertising idea' or style of 'advertisement.'"[157] Rather, the complaint alleged damages caused by a "fraudulent bait-and-switch scheme,"[158] which involved allegations of the defendants' unauthorized distribution of unlicensed software.[159] Specifically, the plaintiff alleged that "by this conduct, including [the defendants'] advertising activities and unauthorized use of [the plaintiff's] software, components, screen displays, product packaging and marks to describe the items that they distribute and sell, [d]efendants misappropriated [the plaintiff's] advertising ideas and style of doing business and infringed [the plaintiff's] copyrights, titles and slogans and trademarks."[160] Because the plaintiff's infringement claims

---

[154] *Tom Kelley Studios, Inc.*, 462 Fed App'x at 741; *State Auto Prop. & Cas. Ins. Co.*, 343 F.3d at 257; *CAT Internet Services, Inc.*, 333 F.3d at 140; *Stunfence, Inc.*, 292 F. Supp. 2d at 1075

[155] *Stunfence, Inc.*, 292 F. Supp. 2d at 1075.

[156] *Hartford Cas. Ins.*, 2012 WL 965089, *7, 9-10.

[157] *Id.* *7.

[158] *Id.*

[159] *Id.* *4.

[160] *Id.*

were "intrinsically and inseparably tied to the fraudulent bait-and-switch software license scheme," the allegations were not covered by the policy as an advertising injury.[161]

The analysis of this District of Utah case law is persuasive. The relevant policy language is identical to the Policy's language in this case. And the interconnectedness of the fraudulent bait-and-switch scheme and infringement allegations is substantially similar to the "passing off" and infringement allegations in 4EverYoung's Counterclaim.

The allegations in 4EverYoung's Counterclaim do not meet the Policy's definition of "advertising injury."[162] The allegations and damages sought in 4EverYoung's Counterclaim are not premised on copying an "'advertising idea' or style of 'advertisement'" under the Policy.[163] They are premised on Derma Pen's alleged frustration of 4EverYoung's contract and intellectual property rights by passing off 4EverYoung intellectual property and products as Derma Pen's own and passing off Derma Pen's actions, goods, and services as being performed by, made by, approved by, sponsored by, or affiliated with 4EverYoung.[164]

Therefore, because an "advertising injury" under the Policy was not alleged, 4EverYoung's Counterclaim did not give rise to potential liability under the Policy to trigger Sentinel's duty to defend or indemnify.

## 4EverYoung's Counterclaim is excluded from coverage under the Policy's Breach of Contract Exclusion

Even if 4EverYoung's Counterclaim alleged an advertising injury under the Policy, it did not give rise to potential liability under the Policy because coverage was excluded by the Policy's Breach of Contract Exclusion. The Policy's Breach of Contract Exclusion provides that

---

[161] *Id*. *9

[162] *Supra* Undisputed Material Facts ¶¶ 20-21

[163] *Id*.

[164] *Id*. ¶¶ 9-18; 4EverYoung's Counterclaim ¶¶ 86, 99, 222, 232, 234, 282, 284, 292-93, 298-300.

"[t]his insurance does not apply to . . . 'Personal and Advertising Injury' . . . [a]rising out of any breach of contract, except an implied contract to use another's 'advertising idea' in [the insured's] 'advertisement'"[165] "or on '[the insured's] website.'"[166]

Derma Pen cites to several non-binding authorities that apply a "but for" standard when applying breach of contract exclusions, *i.e.*, that "the injury is only considered to have arisen out of the contractual breach if the injury would not have occurred but for the breach of contract."[167] Derma Pen points to *Gibbs M. Smith, Inc. v. U.S. Fid. & Guar. Co,.*[168] to argue that the Utah Supreme Court would adopt a narrow "but for" test in applying the Policy's Breach of Contract Exclusion.[169] However, *Gibbs M. Smith, Inc.* involved the applicability of a liability-assumed exclusion, which excluded coverage when the insured contractually assumed liability or promised to indemnify or hold harmless another.[170] The Utah Supreme Court adopted a narrow application of the exclusion because "liability assumed by the insured under a contract or agreement presents an uncertain risk which cannot be determined in advance for the purpose of fixing premiums." And in doing so, the Utah Supreme Court distinguished liability-assumed exclusions from exclusions for liability that results from breach of contract.[171] Therefore, *Gibbs M. Smith, Inc.* does not support Derma Pen's argument.

---

[165] *Supra* Undisputed Material Facts ¶ 22.

[166] *Id.* ¶ 24.

[167] *Looney Ricks Kiss Architects, Inc. v. State Farm Fire & Cas. Co.*, 677 F.3d 250, 256 (5th Cir. 2012); *Houbigant, Inc.*, 374 F.3d at 202; *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608 (2d Cir. 2001); *Bridge Metal Industries, LLC v. The Travelers Indemn. Co.*, 812 F. Supp. 2d 527 (S.D.N.Y. 2011); *Auto Owners Ins. Co. v. LA Oasis, Inc.*, No. 2:04-cv-174, 2005 WL 1313684 (N.D. Ind. May 26, 2005); *Aero Corp. v. Am. Int'l Specialty Lines Ins. Co.*, 676 F. Supp. 2d 738 (S.D. Ind. 2009).

[168] *Gibbs M. Smith, Inc. v. U.S. Fid. & Guar. Co.*, 949 P.2d 337, 341 (Utah 1997).

[169] Derma Pen's Response at 13-16.

[170] *Gibbs M. Smith, Inc.*, 949 P.2d at 341-342.

[171] *Id.*

Rather, Utah courts define broadly the phrase "arising out of" in insurance contracts.[172] "Arising out of" unambiguously means originating or flowing from, or in connection with, the item in question, and requires only that there be some causal relationship between the injury and the risk for coverage is provided.[173] Thus, for the Policy's Breach of Contract Exclusion to apply to 4EverYoung's Counterclaim, the causes of action must have originated from, grown out of, flowed from, or have been in connection with Derma Pen's alleged breach of the Agreement with 4EverYoung. And there must be a causal relationship between 4EverYoung's alleged injuries and Derma Pen's alleged breach.

Here, all of the allegations in 4EverYoung's Counterclaim arise out of Derma Pen's alleged breach of the Agreement with 4EverYoung. This should come as no surprise since the preliminary statement in 4EverYoung's Counterclaim states: "This action involves '4EverYoung's contractual right to purchase a trademark and domain name from Derma Pen[, LLC] and Counterclaim Defendants' attempts to evade that right."[174] 4EverYoung's Counterclaim makes clear that each cause of action was either a direct or closely related result of Derma Pen, LLC's alleged breach of the Agreement.[175] The allegations specifically discuss the Agreement's formation, terms, and termination; the alleged breach and frustration of 4EverYoung's post-termination rights under the Agreement; and the damages that flowed therefrom. Each cause of action realleges and "incorporate[s] by reference" 4EverYoung's

---

[172] *Utah Transit Auth. v. Greyhound Lines, Inc.*, 355 P.3d 947, 961-62 (Utah 2015).

[173] *Id.*; *Nat'l Farmers Union Prop. & Cas. Co. v. Western Cas. & Surety Co.*, 577 P.2d 961, 962 (Utah 1978); *Meadow Valley Contractors, Inc. v. Transcon. Ins. Co.*, 27 P.3d 594, 597 (Utah Ct. App. 2001); *Fed. Ins. Co. v. Tri-State Ins. Co.*, 157 F.3d 800, 803 (10th Cir. 1998); *In the Matter of Doe by & through Bacon v. Farm Bureau Prop. & Cas. Ins. Co.*, No. 2:16-cv-00877-JNP-EJF, 2017 WL 5032526, *5 (D. Utah Nov. 1, 2017).

[174] *Supra* Undisputed Material Facts ¶ 6.

[175] *Id.* ¶¶ 8-18.

breach of contract allegations.[176] And each cause of action references the Agreement and the alleged breach in order to arrive at 4EverYoung's request for relief.[177]

All of 4EverYoung's allegations and causes of action originating or flowing from, or are inseparably connected with the Agreement and the alleged breach of the Agreement. And 4EverYoung's alleged injuries have a causal relationship to the alleged breach of the Agreement.[178] Therefore, Policy's Breach of Contract Exclusion applies to bar coverage for 4EverYoung's Counterclaim.[179] And the only exception to the exclusion (for "an implied contract to use another's 'advertising idea' in [the insured's] 'advertisement'"[180] "or on '[the insured's] website.'")[181] is clearly inapplicable because no implied contact is alleged by 4EverYoung.

Because the Policy's Breach of Contract Exclusion bars coverage for 4EverYoung's Counterclaim, 4EverYoung's Counterclaim did not give rise to potential liability under the Policy to trigger Sentinel's duty to defend or indemnify.

**4EverYoung's Counterclaim is excluded from coverage under the Policy's Intellectual Property Exclusion and Domain Name Exclusion**

Even if 4EverYoung's Counterclaim alleged an advertising injury under the Policy, it did not give rise to potential liability under the Policy because coverage was excluded by the

---

[176] 4EverYoung's Counterclaim ¶¶ 219-227, 228, 237, 251, 259, 267, 273, 280, 290, 296, 307.

[177] *Id.* ¶¶ 222, 232, 239, 253, 261, 269-70, 274-75, 283, 291, 297, 308.

[178] *Sport Supply Group, Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 458-459 (5th Cir. 2003); *Callas Enter., Inc. v. Travelers Indem. Co. of Am.*, 193 F.3d 952 (8th Cir. 1999); *Essex Ins. Co. v. Edizone*, LC, No. 2:07-cv-00984-BSJ, 2011 WL 1791643, *5-6 (D. Utah May 10, 2011); *Pennsylvania Pulp & Paper Co. v. Nationwide Mut. Ins. Co.*, 100 S.W.3d 566 (Tex. App. 2003).

[179] *Charter Oak Fire Ins. Co. v. Hedeen & Companies*, 280 F.3d 730 (7th Cir. 2002); *Danby of No. America, Inc. v. Travelers Ins. Co.*, 25 Fed. App'x 186, 193-194 (4th Cir. 2002); *Capitol Specialty Ins. v. Indus. Elects., LLC*, 407 Fed. App'x 47 (6th Cir. 2011); *Pennsylvania Pulp & Paper Co.*, 100 S.W.3d 566; *Fallon McElligott, Inc. v. Seaboard Sur. Co.*, 607 N.W.2d 801, 804 (Minn. App. 2000).

[180] *Supra* Undisputed Material Facts ¶¶ 22.

[181] *Id.* ¶ 24.

Policy's Intellectual Property Exclusion and Domain Name Exclusion. The Policy's Intellectual

Property Exclusion excludes coverage for an advertising injury:

> (a) "[a]rising out of any actual or alleged infringement or violation of any intellectual property right, such as copyright, patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity;" or

> (b) "[a]ny injury or damage alleged in any claim or 'suit' that also alleges an infringement or violation of any intellectual property right."[182]

4EverYoung's Counterclaim plainly falls within *both subsections* of the Intellectual

Property Exclusion. 4EverYoung's Counterclaim alleges injury "arising out of" (*i.e.* originating

or flowing from, or in connection with and having a causal relationship to)[183] trademark and

trade name infringement and violation of intellectual property rights[184] for purposes of

subsection (a). It also alleges other damages, such as breach of contract and unjust enrichment,[185]

for purposes of subsection (b).

> The only exception to the Policy's Intellectual Property Exclusion states:

> [T]his exclusion does not apply if the only allegation in the claim or 'suit' involving any intellectual property right is limited to: (1) Infringement, in [the insured's] 'advertisement', of: (a) Copyright; (b) Slogan; or (c) Title of any literary or artistic work; or (2) Copying, in [the insured's] 'advertisement', a person's or organization's 'advertising idea' or style of 'advertisement'."[186]

This exception is inapplicable to 4EverYoung's Counterclaim. 4EverYoung alleges more than

infringement in Derma Pen's advertisement or copying in Derma Pen's advertisement of

4EverYoung's advertising idea or style of advertisement. For example, 4EverYoung alleges

---

[182] *Id.* ¶ 23.

[183] *Utah Transit Auth.*, 355 P.3d 961-62; *Nat'l Farmers Union Prop. & Cas. Co.*, 577 P.2d at 962; *Meadow Valley Contractors, Inc.*, 27 P.3d at 597; *Fed. Ins. Co.*, 157 F.3d at 803; *In the Matter of Doe by & through Bacon*, 2017 WL 5032526, *5.

[184] 4EverYoung's Counterclaim ¶¶ 83-94, 160-167, 219-316.

[185] *Id.* ¶¶ 219-236, 251-258.

[186] *Supra* Undisputed Material Facts ¶ 23.

breach of the Agreement's post-termination rights and obligations.[187] Additionally, 4EverYoung's Counterclaim does not allege infringement of 4EverYoung's copyright, slogan, or title of any literary or artistic work. And as discussed above, 4EverYoung's Counterclaim does not allege copying of 4EverYoung's "advertising idea" or style of "advertisement" under the Policy.[188]

The Policy's Cyberflex Endorsement modifies the Intellectual Property Exclusion for Derma Pen's "web site or internet related activities" by extending the exception to "infringement, in [Derma Pen's] 'advertisement' or on '[Derma Pen's] web site.'"[189] But 4EverYoung's Counterclaim still does not fall into the expanded exception. While 4EverYoung's allegations relate to Derma Pen's web site and internet activities, 4EverYoung does not allege infringement of 4EverYoung's copyright, slogan, or title of any literary or artistic work. And again, as discussed above, 4EverYoung does not allege copying of 4EverYoung's "advertising idea" or style of "advertisement" under the Policy.[190] Therefore, the Policy's Intellectual Property Exclusion applies to bar coverage for 4EverYoung's Counterclaim, and the Cyberflex Endorsement does not change this result.

Nevertheless, even 4EverYoung's allegations regarding Derma Pen's web site and internet related activities fell in the Cyberflex Endorsement's expanded exception to the Intellectual Property Exclusion, the Cyberflex Endorsement does not alter the Policy's Domain Name Exclusion. The Domain Name Exclusion excludes coverage for any advertising injury "[a]rising out of the unauthorized use of another's name or product in [Derma Pen's] e-mail

---

[187] *Id.* ¶¶ 8-18; 4EverYoung's Counterclaim ¶¶ 83-94, 160-167, 219-316.

[188] *Supra* Discussion at 28-32.

[189] *Id.* ¶ 24.

[190] *Supra* Discussion at 28-32.

address, domain name or metatags, or any other similar tactics to mislead another's potential customers."[191]

Each of 4EverYoung's allegations regarding Derma Pen's web site and internet related activities "aris[es] out of" (*i.e.* originates or flows from, or is in connection with and has a causal relationship to)[192] the unauthorized use of "Dermapen" in Derma Pen's domain name "www.dermapen.com." For example, 4EverYoung alleges that Derma Pen refused to comply with its post-termination obligations under the Agreement by continuing to use the "Dermapen" trademark and domain name in connection with its sales of inventory acquired from 4EverYoung and in connection with counterfeit products manufactured and supplied by third parties.[193] And 4EverYoung alleges that in doing so, Derma Pen confused and misled the public by passing off 4EverYoung's intellectual property and products as Derma Pen's own, and by passing of Derma Pen's actions, goods, and services as being performed by, made by, approved by, sponsored by, or affiliated with 4EverYoung.[194] Therefore, 4EverYoung's allegations regarding Derma Pen's web site and internet related activities are excluded from coverage by the Policy's Domain Name Exclusion.

Because the Policy's Intellectual Property Exclusion and Domain Name Exclusion bar coverage for 4EverYoung's Counterclaim, 4EverYoung's Counterclaim did not give rise to potential liability under the Policy to trigger Sentinel's duty to defend or indemnify.

---

[191] *Id*. ¶ 22.

[192] *Utah Transit Auth.*, 355 P.3d 961-62; *Nat'l Farmers Union Prop. & Cas. Co.*, 577 P.2d at 962; *Meadow Valley Contractors, Inc.*, 27 P.3d at 597; *Fed. Ins. Co.*, 157 F.3d at 803; *In the Matter of Doe by & through Bacon*, 2017 WL 5032526, *5.

[193] 4EverYoung's Counterclaim ¶ 69, 83, 222.

[194] *Id*. ¶¶ 86, 99, 222, 232, 234, 298-300; *Supra* Undisputed Material Facts 9-18.

**Sentinel had no duty to indemnify Derma Pen against 4EverYoung's Counterclaim**

Finally, because "[t]he duty to defend is . . . broader than the duty to indemnify," where "there is no duty to defend, there can be no duty to indemnify."[195] Derma Pen did not respond to Sentinel's argument that because no duty to defend exists under the Policy, Sentinel had no duty to indemnify Derma Pen under the Policy.[196] And Derma Pen's only arguments regarding Sentinel's duty to indemnify come in the context of its analysis of Sentinel's duty to defend.[197] Therefore, because Sentinel had no duty to defend Derma Pen against 4EverYoung's Counterclaim under the Policy,[198] Sentinel had no duty to indemnify Derma Pen under the Policy.

## Conclusion

Viewing the record and all reasonable inferences drawn therefrom in a light most favorable to Derma Pen, there is no genuine dispute as to any material fact and Sentinel is entitled to judgment as a matter of law. The Undisputed Material Facts demonstrate that 4EverYoung's Counterclaim does not allege an advertising injury giving rise to potential liability under the Policy. 4EverYoung's allegations do not meet the Policy's definition of "advertising injury" and, regardless, fall within the Policy's exclusions of coverage. Therefore, Sentinel had no duty to defend and indemnify Derma Pen against 4EverYoung's Counterclaim in the Underlying Lawsuit.

---

[195] *Mid-America Pipeline Co., LLC*, 2006 WL 1278748, *1 (citing *Sharon Steel Corp.*, 931 P.2d 127); *see also Encompass Indem. Co*, 2017 WL 2062868, *9.

[196] Sentinel's Motion for Summary Judgment at 24.

[197] Derma Pen's Motion for Summary Judgment; Derma Pen's Response.

[198] *Supra* Discussion at 26-38.

**ORDER**

IT IS HEREBY ORDERED that Sentinel's Motion for Summary Judgment[199] is GRANTED, and Derma Pen's Motion for Summary Judgment[200] is DENIED. Derma Pen's Complaint[201] is DISMISSED with prejudice.

The Clerk is directed to close the case.

Dated June 22, 2021.

BY THE COURT

David Nuffer
United States District Judge

---

[199] Docket no. 26, filed June 15, 2017.

[200] Docket no. 18, filed May 5, 2017.

[201] Docket no. 45, filed June 3, 2021; docket no. 3-1 on July 22, 2016.